ROBERT DEMARTINO AND ELIZABETH DEMARTINO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ROBERT E. MCDONNELL AND ELAINE C. MCDONNELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6351-81, 6352-81.          Filed March 12, 1987.

*James C. Sherwood*, for the petitioners.
*Kendall C. Jones* and *Lawrence M. Hill*, for the respondent.

SUPPLEMENTAL OPINION

KÖRNER, *Judge*: In the earlier opinion in this matter, *DeMartino v. Commissioner*, T.C. Memo. 1986-263, we held that the increased interest rate authorized by section 6621(d)[1] did not apply to the underpayments determined against petitioners. Section 6621(d) was thereafter amended

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

by section 1535 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2750 (hereinafter sometimes referred to as the act). The issue we must now decide is whether this amendment is applicable to petitioners.[2]

Section 6621(d)[3] originally provided for an increased interest rate to be applied to certain underpayments attributable to "tax motivated transactions."[4] The term "tax motivated transactions" was defined to include, inter alia, "any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092)." Section 1092(c) states that the term "straddle" means "offsetting positions

---

[2]On Nov. 12, 1986, respondent filed a motion to reconsider our earlier opinion on this issue. We granted the motion on Mar. 4, 1987.

[3]Hereinafter, unless otherwise indicated, references to sec. 6621(d) will be to that section as it was enacted in 1984 and as it remained until it was amended in 1986.

[4]Prior to the act, sec. 6621(d) provided:

SEC. 6621(d). INTEREST ON SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—

(1) IN GENERAL.—In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the adjusted rate established under subsection (b).

(2) SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000.

(3) TAX MOTIVATED TRANSACTIONS.—

(A) IN GENERAL.—For purposes of this subsection, the term "tax motivated transaction" means—

(i) any valuation overstatement (within the meaning of section 6659(c)),

(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),

(iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and

(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period.

(B) REGULATORY AUTHORITY.—The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated. In prescribing regulations under the preceding sentence, the Secretary shall take into account—

(i) the ratio of tax benefits to cash invested,

(ii) the methods of promotion [of] the use of this type of transaction, and

(iii) other relevant considerations.

(C) EFFECTIVE DATE FOR REGULATIONS.—Any regulations prescribed under subparagraph (A)(iv) or (B) shall apply only to interest accruing after a date (specified in such regulations) which is after the date on which such regulations are prescribed.

(4) JURISDICTION OF TAX COURT.—In the case of any proceeding in the Tax Court for a redetermination of a deficiency, the Tax Court shall also have jurisdiction to determine the portion (if any) of such deficiency which is a substantial underpayment attributable to tax motivated transactions.

with respect to personal property."[5] The latter phrase is defined to occur "if there is a substantial diminution of the taxpayer's risk of loss from holding any position with respect to personal property by reason of his holding 1 or more other positions with respect to personal property (whether or not of the same kind)."

In *DeMartino v. Commissioner, supra,* we held that the substantial diminution in petitioners' risk of holding the Crude Oil Straddle did not result *by reason of holding* offsetting positions in personal property, but rather, that the risk was eliminated because the Crude Oil Market was rigged and manipulated. Thus, the Crude Oil Straddle simply did not fall within the definition of "straddle" established by section 6621(d).

---

[5]Sec. 1092(c) provides in relevant part:

SEC. 1092(c). STRADDLE DEFINED.—For purposes of this section—

(1) IN GENERAL.—The term "straddle" means offsetting positions with respect to personal property.

(2) OFFSETTING POSITIONS.—

(A) IN GENERAL.—A taxpayer holds offsetting positions with respect to personal property if there is a substantial diminution of the taxpayer's risk of loss from holding any position with respect to personal property by reason of his holding 1 or more other positions with respect to personal property (whether or not of the same kind).

(B) ONE SIDE LARGER THAN OTHER SIDE.—If 1 or more positions offset only a portion of 1 or more other positions, the Secretary shall by regulations prescribe the method for determining the portion of such other positions which is to be taken into account for purposes of this section.

(C) SPECIAL RULE FOR IDENTIFIED STRADDLES.—In the case of any position which is not part of an identified straddle (within the meaning of subsection (a)(2)(B), such position shall not be treated as offsetting with respect to any position which is part of an identified straddle.

(3) PRESUMPTION.—

(A) IN GENERAL.—For purposes of paragraph (2), 2 or more positions shall be presumed to be offsetting if—

(i) the positions are in the same personal property (whether established in such property or a contract for such property),

(ii) the positions are in the same personal property, even though such property may be in a substantially altered form,

(iii) the positions are in debt instruments of a similar maturity or other debt instruments described in regulations prescribed by the Secretary,

(iv) the positions are sold or marketed as offsetting positions (whether or not such positions are called a straddle, spread, butterfly, or any similar name),

(v) the aggregate margin requirement for such positions is lower than the sum of the margin requirements for each such position (if held separately), or

(vi) there are such other factors (or satisfaction of subjective or objective tests) as the Secretary may by regulations prescribe as indicating that such positions are offsetting.

For purposes of the preceding sentence, 2 or more positions shall be treated as described in clause (i), (ii), (iii), or (vi) only if the value of 1 or more of such positions ordinarily varies inversely with the value of 1 or more of the other positions.

(B) PRESUMPTION MAY BE REBUTTED.—Any presumption established pursuant to subparagraph (A) may be rebutted.

Shortly after our opinion was filed in *DeMartino*, section 1535 of the Tax Reform Act of 1986 was enacted to amend section 6621(d).[6] Section 1535 provides:

SEC. 1535(a). CLARIFICATION OF TREATMENT OF SHAM OR FRAUDULENT TRANSACTIONS.—Subparagraph (A) of section 6621(c)(3) (as so redesignated) is amended by striking out "and" at the end of clause (iii), by striking out the period at the end of clause (iv) and inserting in lieu thereof ", and", and by adding at the end thereof the following new clause:

"(v) any sham or fraudulent transaction."

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply to interest accruing after December 31, 1984; except that such amendment shall not apply in the case of any underpayment with respect to which there was a final court decision before the date of the enactment of this Act.

The Conference Committee report[7] pertaining to this section states in pertinent part that:

The Tax Court has recently held (*DeMartino v. Commissioner*, T.C. Memo. 1986-263 (June 30, 1986); *Forseth v. Commissioner*, T.C. Memo. 1985-279 (June 11, 1985)) that sham transactions that would be subject to this special interest rate were they not shams are not subject to this special interest rate because they are shams. The conferees view it as anomalous that a genuine transaction (lacking the proper profit motive) would be subject to a higher interest rate, while a sham transaction, which is significantly more abusive, would escape the higher interest rate simply because it is a sham. Accordingly, the conference agreement, consistent with the legislative intent in originally enacting section 6621(d) in 1984, explicitly adds sham or fraudulent transactions to the list of transactions subject to this higher interest rate. The intent of the conferees is to reverse the holding of these Tax Court cases on this issue.

This clarification of present law applies to interest accruing after December 31, 1984, which is the date this higher interest rate took effect. This clarification does not apply, however, to any underpayment with respect to which there was a final court decision (either through exhausting all appeals rights or the lapsing of the time period within which an appeal must be pursued) before the date of enactment of this Act.

[H. Rept. 99-841 (Conf.), at II-796 (1986).]

---

[6]Sec. 6621(d) was redesignated as sec. 6621(c) by act sec. 1511(c)(1)(A)-(C).

[7]When interpreting a statute, especially a new statute, we may look to the statute's legislative history for interpretative assistance. *Perlin v. Commissioner*, 86 T.C. 388, 419 (1986).

With this background in mind, we must now decide whether the above amendment should be retroactively[8] applied to petitioners.

It is clear that the amendment, on its face, would apply to petitioners' conduct if it had been in effect at the time our original opinion was filed. The trades involved in *DeMartino* were the result of rigged and manipulative trading practices and thus were "shams" for Federal tax purposes. Moreover, as the Conference Committee report indicates, it was the intent of Congress to "reverse the holding" of the original *DeMartino* decision. It is also clear that the effective date of the amendment encompasses petitioners. Section 1535 of the act provides that the amendment shall apply to interest accruing after December 31, 1984, except in the situation involving an underpayment where a final court decision has been entered. As a *decision* has not yet been entered in *DeMartino*—much less a *final decision*—it would appear that the statutory requirements have now been met to apply the increased interest rate to petitioners.[9]

Petitioners, nevertheless, argue that it is constitutionally impermissible to retroactively apply the amendment to them under these circumstances. We disagree. It is well settled that Federal income tax provisions may be applied retroactively without infringing upon constitutional rights. *Brushaber v. Union Pacific R. Co.*, 240 U.S. 1, 20 (1916); *Cooper v. United States*, 280 U.S. 409, 411 (1930); *Wilgard Realty Co. v. Commissioner*, 127 F.2d 514, 517 (2d Cir. 1942); *Niagara Searchlight Co. v. Commissioner*, 20 T.C. 745, 746 (1953). The reasoning behind this principle is that taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract, but instead, it is a way of apportioning the cost of Government among those who enjoy its benefits and who must bear the resulting burdens. Since no citizen enjoys immunity from those burdens, retroactive application of the tax laws does not

---

[8]Respondent argues that the amendment does not change existing law but merely clarifies it. In light of the ensuing analysis we need not address this argument.

[9]The opinion in *DeMartino* was filed under Rule 155 which permits entry of decision to be withheld in order to allow the parties an adequate period of time to submit computations to the Court consistent with our resolution of the issues. For this reason, a decision has not yet been entered.

necessarily infringe on due process. See *Welch v. Henry*, 305 U.S. 134, 146-147 (1938).[10]

The Supreme Court has also given little weight to the fact that the right affected by the retroactive legislation was asserted in litigation pending at the time of the enactment. In *Chase Securities Corp. v. Donaldson*, 325 U.S. 304 (1945), a suit was brought to recover the purchase price of securities sold in violation of the Minnesota Blue Sky Law. The defendant had pleaded the statute of limitations, which if it had run apparently would have barred the suit, but the trial court found that the statute had been tolled and held for the plaintiff. On appeal, the State supreme court reversed on this issue and remanded for further proceedings "on issues other than that of the tolling of the statute of limitations." *Donaldson v. Chase Securities Corp.*, 209 Minn. 165, 165, 296 N.W. 518, 518 (1941). While proceedings were pending in the lower court the legislature enacted a statute which as applied to the case extended the limitations period and thereby revived the plaintiff's claim. The Supreme Court held that this new statutory provision could constitutionally be applied to the case since there had been no final disposition of the litigation.[11] 325 U.S. at 316.[12]

Application of the section 6621(d) amendment to petitioners is clearly constitutional based on the holding in *Chase Securities Corp.* Here, as in that case, legislation was enacted after the original lower court opinion was rendered. In *Chase Securities Corp.*, the court held that as there had been no final disposition of the case, it was proper to apply

---

[10]As Judge Learned Hand stated in *Cohan v. Commissioner*, 39 F.2d 540, 545 (2d Cir. 1930), the taxpayer "may indeed complain that could he have foreseen the increase he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities, the system being already in operation." For commentary on this subject see 1 J. Mertens, Law of Federal Income Taxation, sec. 4.14 at 30-32 (1985); Hochman, "The Supreme Court and the Constitutionality of Retroactive Legislation," 73 Harv. L. Rev. 692, 706 (1960).

[11]Cf. *Western Union Tel. Co. v. Louisville & N.R.R.*, 258 U.S. 13, 22 (1922) where the Supreme Court indicated that it would be reluctant to permit the legislature to interfere with a right that has been "adjudicated * * * in [a] final and unreviewable determination."

[12]See also *Goddard v. Frazier*, 156 F.2d 938 (10th Cir.), cert. denied 329 U.S. 765 (1946), where the Court of Appeals for the 10th Circuit held that a statute enacted after judgment could be retroactively applied on appeal; *LaBelle v. Commissioner*, T.C. Memo. 1986-602 (Court directed on remand by the Ninth Circuit to retroactively apply amendments to sec. 6013(e) enacted after the original decision); Hochman, *supra* at 717-719. See and compare *Forbes Pioneer Boat Line v. Board of Commissioners*, 258 U.S. 338 (1922); *Mars, Inc. v. Commissioner*, 88 T.C. 428 (1987).

the amendment retroactively. Similarly, as a final decision has not been reached in *DeMartino*, it is constitutionally proper to apply the amended provision to petitioners herein.[13]

It is also significant that applying the amendment to petitioners is not "so harsh and oppressive as to transgress the constitutional limitation." *Welch v. Henry*, 305 U.S. 134, 147 (1938). Petitioners did not have a vested right in our opinion in *DeMartino*. As we indicated *supra*, although an *opinion* was filed in *DeMartino*, the opinion did not ripen into a *decision* of the Court or a final judgment. Thus, it cannot be argued that a right was created in petitioners, nor have petitioners demonstrated that they relied on the opinion to their detriment. Petitioners were also given a full and fair opportunity to litigate the underlying underpayment at the trial in this case. For these reasons, we hold that section 1535 of the act does apply to petitioners and that the increased interest rate will therefore be applied to their underpayments beginning after December 31, 1984.[14] In reaching this result, it is clear that we have complied with the congressional intent of section 1535 and that our conclusion is "consistent with the legislative intent in originally enacting section 6621(d)." See H. Rept. 99-841, *supra*.[15]

---

[13]It is noteworthy that in *Solowiejczyk v. Commissioner*, 85 T.C. 552 (1985), affd. without opinion 795 F.2d 1005 (2d Cir. 1986), we held that sec. 6621(d) could be constitutionally applied to an underpayment even though the relevant income tax return was filed several years before the effective date of the section.

[14]Petitioners argument, that sec. 6621(d) is "penalty like" in application and that we are therefore required to reach a different result, must similarly be rejected. The event that triggered the application of sec. 6621(d) was a substantial underpayment occurring *after* the original effective date of that section. *Solowiejczyk v. Commissioner*, *supra* at 555. Thus, in this sense, it is clear that the statute was only applied prospectively as the underpayment occurred after the effective date. Our opinion herein focuses on the more narrow question of whether the amendments to sec. 6621(d) may be applied to petitioners after our original opinion was filed but before a decision was entered.

[15]The amendment to sec. 6621(d) might also be analogized to a "curative statute." In *Graham & Foster v. Goodcell*, 282 U.S. 409, 429 (1931), where the Commissioner permitted the statute of limitations to run on certain claims for taxes upon the mistaken assumption that the limitations period would not bar subsequent collections by distraint as opposed to judicial proceedings, a curative statute was permitted to remedy "defects in the administration of government." The Court reasoned "the legislature is not prevented from curing the defect in administration simply because the effect may be to destroy causes of action which would otherwise exist." 282 U.S. at 429. Here, the amendment to sec. 6621(d) is curative in that it corrects the "anomalous result" reached under the statute as it was originally enacted.

In view of the foregoing, we modify our earlier opinion, *DeMartino v. Commissioner*, T.C. Memo. 1986-263.

*Decisions will be entered under Rule 155.*