JOHN R. FECHKO AND SUZANNE FECHKO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
FECHKO v. COMMISSIONER
Docket No. 12797-91
United States Tax Court
T.C. Memo 1992-735; 1992 Tax Ct. Memo LEXIS 781; 64 T.C.M. (CCH) 1638; December 30, 1992, Filed *781 Decision will be entered for respondent. For Petitioners: Mark E. Gammons. For Respondent: Jeffry J. Erney. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
1986
$ 17,246
$ 862
[1]
$ 4,312
1987
17,190
860
[2]
4,046
Respondent also determined that petitioners are liable for the increased rate of interest provided in section 6621(c) for both 1986 and 1987. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The issues in this case arise out of petitioners' interests in three tax shelter programs known as Gifts Advertising (Gifts), Bingo Leasing *782 (Bingo), and Pairware Research & Development (Pairware) (collectively the Programs). With the exception of the question of deductions for petitioners' unreturned out-of-pocket expenditures made to acquire interests in the Programs, petitioners have stipulated respondent's adjustments in petitioners' Federal income tax liabilities for the years at issue. After concessions and stipulations, the issues that remain for decision are: (1) Whether petitioners are liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations; (2) whether petitioners are liable for additions to tax under section 6661(a) for substantial understatement of income tax; and (3) whether petitioners are liable for increased interest under section 6621(c). For the reasons discussed below we hold that petitioners are liable for additions to tax under sections 6653(a) and 6661(a) and increased interest under section 6621(c). FINDINGS OF FACT The facts that have been stipulated are so found, and we incorporate them by this reference. Petitioners resided in Rocky River, Ohio, when they filed their petition. Petitioner John R. Fechko was a police chief in Seven *783 Hills, Ohio, during the years in issue. Mr. Fechko is a high school graduate, has had some "in-service" training while in the Marine Corps, and studied constitutional law at Kaiser Community College for one academic quarter in the early 1970s. He has had no training in accounting, business, marketing, advertising, or income taxation. Prior to buying into the Programs, Mr. Fechko had invested in a savings plan at his local bank and had prepared his own income tax returns. Petitioner Suzanne Fechko has a bachelor's degree in business administration from Baldwin-Wallace College. During the years at issue, she was a sales representative for Franklin Oil of Ohio. In 1985, petitioners were introduced to Graham & Associates through a personal friend. Mr. Fechko met with John Graham three times that year before he "became a client of Graham & Associates". During 1985, at John Graham's inducement, Mr. Fechko acquired an interest in a tax shelter program leasing ice cream vending machines. Petitioners thereafter became clients of John Graham's brother, Thomas A. Graham (Graham), and his associate, Marie Rady. Graham styled himself an investment counselor, tax expert, and financial *784 adviser, and offered petitioners opportunities to acquire interests in Gifts, Bingo, and Pairware. In 1986 and 1987, petitioners made payments to acquire interests in the Programs as well as a fourth program, not here at issue, known as Sun Valley Limited. There is almost no evidence in this record that describes how the Programs purported to operate. However, it is clear that the Programs are identical to those in Klieger v. Commissioner, T.C. Memo. 1992-734; see also Cross v. Commissioner, T.C. Memo. 1992-715 (Bingo). [1]
*785 Graham told petitioners that an interest in the Programs would enable them to defer taxes on their current income through tax deductions and credits until they were later making profits on their investments. Graham advised petitioners to reduce their income tax withholding by increasing the number of exemptions claimed on their withholding certificates (Forms W-4) and to use the extra take-home pay to make the initial payments to acquire interests in the Programs. Petitioners then signed notes for the balance due under their agreements to acquire interests in the Programs. Graham & Associates, through its tax return preparation division, Management Accounting Tax & Service, prepared petitioners' 1986 and 1987 Federal income tax returns at no additional charge. Petitioners understood that if they were audited by the IRS, Graham & Associates would represent them at no additional charge. Petitioners did not seek any independent professional advice on either the economic feasibility of the Programs or their purported tax benefits. Petitioners did not feel impelled to seek outside advice because they regarded Graham & Associates as their tax and financial advisers. Nor did Petitioners *786 try to verify independently the professional expertise or reputation of Graham & Associates or any of its personnel. Mr. Fechko felt no need to make an investigation along these lines because Graham & Associates had passed his self-formulated "test" of sound tax practice: Mr. Fechko believed that the IRS had approved Graham & Associates' Programs because he received a refund in 1986 in the exact amount claimed on his 1985 income tax return plus 11 percent interest, and that his investment in John Graham's ice cream vending machine program, as reported on petitioners' 1985 return, had survived scrutiny by the IRS's "tax abuse shelter unit". Mr. Fechko also felt comfortable with the Programs because he had told John Graham that he did not want to get involved in any illegal tax shelters, in view of his position as a police chief. Mr. Fechko's "test" did not include any measurement of the Programs' economic feasibility or profit potential. On August 10, 1987, petitioners filed an amended 1986 income tax return (Form 1040X), prepared by Management Accounting Tax & Service, that reported a $ 423 refund due. The reported changes were attributed to two mistakes, not here at issue, made *787 in the alternative minimum tax computation on Form 6251 attached to their original return. It appears that this refund was not approved by the IRS and was never paid. This amended return did not disclose any of the tax shelter items reported on the original return or purport to change any of the tax treatment of those items. In 1986 or 1987, Mr. Fechko realized that he was not going to make any profits from his investments in Graham's programs. Although Graham had repeatedly promised substantial returns on the investments, Mr. Fechko never received any money with respect to any of the Programs. ULTIMATE FINDINGS OF FACT The Programs were sham transactions without economic substance. OPINION I. Preliminary Matters
Petitioners have stipulated that they will be bound by the Court's decision on the cross-motions for partial summary judgment in Omerza v. Commissioner, docket No. 24138-90, on the question of whether petitioners were entitled to loss deductions under section 165(c) for their unrecovered out-of-pocket expenditures to acquire interests in the Programs. In Omerza v. Commissioner, T.C. Memo. 1992-206, we held, even though it *788 was stipulated for purposes of the cross-motions that the Omerzas acquired an interest in Gifts with the intent of making a profit, that they were not entitled to a loss deduction under section 165(c)(2) for their $ 3,200 initial cash outlay because it was also stipulated that Gifts was a sham transaction without economic substance. In Omerza v. Commissioner, supra, we also held that petitioners were not entitled to a theft loss deduction under section 165(c)(3) in 1986 for their unreturned $ 3,200. As a result of their stipulation to be bound by our decision in Omerza v. Commissioner, supra, and their stipulation that the Programs were sham transactions without economic substance, petitioners are not entitled to any deductions under section 165(c) in 1986 for their unrecovered cash payments to acquire interests in the Programs. By reason of their stipulation, petitioners are liable for the deficiencies in Federal income tax determined by respondent. The remaining issues are their liabilities for additions to tax. II. Additions to Tax and Increased Interest
A. Section 6653(a) -- Negligence
Section *789 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment due to negligence or intentional disregard of rules or regulations. If any part of the underpayment was due to negligence or intentional disregard of rules or regulations, the 5-percent addition to tax is imposed on the entire underpayment. Section 6653(a)(1)(B) imposes an addition of 50 percent of the interest payable under section 6601 on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. We have found taxpayers liable under section 6653(a) for claiming income tax deductions in connection with sham transactions without making a reasonable investigation into whether they were entitled to such deductions or credits, and without reasonably relying on the advice of an independent financial or tax adviser. See, e.g., Rybak v. Commissioner, 91 T.C. 524, 565-566 (1988); Klieger v. Commissioner, T.C. Memo. 1992-734; Illes v. Commissioner, T.C. Memo. 1991-449, affd. without published opinion 976 F.2d 733 (6th Cir. 1992). Section *790 6653(a)(3) provides that negligence "includes any failure to make a reasonable attempt to comply with the provisions of this title". Negligence is also defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F.2d 494, 506 (5th Cir. 1967); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence is measured by an objective standard, Howard v. Commissioner, 931 F.2d 578, 582 (9th Cir. 1991), affg. T.C. Memo. 1988-531, and courts do not look into the taxpayer's mind when deciding whether he acted reasonably or prudently. Instead, they look to what a reasonably prudent person would have done. Id. Petitioners bear the burden of proving that they were not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). In a related case, Klieger v. Commissioner, supra, we held that similarly situated taxpayers, who bought into the Programs without obtaining independent professional financial *791 or tax advice, and who relied on Graham to prepare their 1986 and 1987 tax returns, were negligent in claiming deductions and credits with respect to those programs. For the reasons stated in Klieger v. Commissioner, supra, we hold that petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence for the years 1986 and 1987. We see nothing in the facts of this case or in petitioners' and respondent's arguments that distinguishes this case from Klieger v. Commissioner, supra. The basis of petitioners' request that we not consolidate their case with Klieger v. Commissioner, supra, seems to have been their argument at trial that the IRS is estopped from determining additions to tax for 1986 and 1987 because the IRS tacitly approved the Programs by paying the full amount of the refund claimed due on petitioners' 1985 income tax return with interest. This argument has no merit. It is well settled that payment of a refund claimed on a Form 1040 does not estop the IRS from later determining a deficiency in the same year or any other year. Such payment *792 is neither implied nor express approval of the items reported on the return at issue before the Court. Gordon v. United States, 757 F.2d 1157 (11th Cir. 1985); Warner v. Commissioner, 526 F.2d 1 (9th Cir. 1975), affg. T.C. Memo. 1974-243; Clark v. Commissioner, 158 F.2d 851 (6th Cir. 1946), affg. a Memorandum Opinion of this Court dated Apr. 1, 1946; see also Graff v. Commissioner, 74 T.C. 743, 760-765 (1980), affd. 673 F.2d 784 (5th Cir. 1982) (elements of equitable estoppel). Petitioners do not avoid liability for the negligence additions for either 1986 or 1987 on the ground of estoppel. B. Section 6661 -- Substantial Understatement
Section 6661(a) provides for an addition to tax equal to 25 percent of an underpayment of income tax attributable to a taxpayer's substantial understatement of income tax liability. Petitioners bear the burden of proving that they are not liable for this addition to tax. Rule 142(a); King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 517 (1992). *793 An "understatement" is defined as the excess of the amount of tax required to be shown on the return over the amount actually shown on the return. Sec. 6661(b)(2)(A). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). For both years in question, petitioners' understatements were substantial within the meaning of section 6661(b)(1)(A). In general, if the taxpayer had "substantial authority" for his tax treatment of the item in question, then there is no "understatement" and the taxpayer may escape liability for this addition to tax. Sec. 6661(b)(2)(B)(i). There also is no "understatement" if the taxpayer adequately disclosed the tax treatment of the item. Sec. 6661(b)(2)(B)(ii). However, where the item in question is attributable to a tax shelter, [2] the disclosure exception will not apply, sec. 6661(b)(2)(C)(i)(I), and the substantial authority exception will apply only if the taxpayer reasonably believed that his treatment of the item was more likely than not the proper tax treatment. Sec. 6661(b)(2)(C)(i)(II); sec. 1.6661-5, Income Tax Regs.
*794 The Programs were tax shelters within the meaning of section 6661(b)(2)(C)(ii), and petitioners could not have avoided the additions for substantial understatement even if they had adequately disclosed the nature of these items on their returns. Sec. 6661(b)(2)(C)(i)(I). Moreover, petitioners never disclosed, so they could not satisfy the test even if this was not a tax shelter case. Cf. sec. 1.6661-6(c), Income Tax Regs. (automatic waiver (except for tax shelter items) if the taxpayer discloses on an amended return). For the reasons stated in Klieger v. Commissioner, supra, petitioners neither had substantial authority for the way the items in question were treated on their returns nor did they reasonably believe that the treatment of these items on their returns was more likely than not the proper tax treatment. See sec. 1.6661-5(a)(1), Income Tax Regs. In addition, petitioners' mistaken belief that the IRS had approved the deductions and credits claimed on their 1986 and 1987 returns is neither "substantial authority" nor a basis for reasonable belief that more likely than not the return treatment was proper. We therefore hold that petitioners *795 are liable for additions to tax under section 6661(a) for substantial understatement of their 1986 and 1987 income tax liabilities. We hold further that respondent did not abuse her discretion in not waiving those additions under section 6661(c). Mailman v. Commissioner, 91 T.C. 1079 (1988); Klieger v. Commissioner, supra.
C. Section 6621(c)
Section 6621(c) provides for an interest rate of 120 percent of the adjusted rate established under section 6621(b) if there is a "substantial underpayment" (an underpayment in excess of $ 1,000) in a taxable year "attributable to 1 or more tax motivated transactions". Sec. 6621(c)(1) and (2). Petitioners bear the burden of proving that the increased interest rate does not apply. Rule 142(a); Rybak v. Commissioner, 91 T.C. 524, 567 (1988). Congress amended section 6621(c)(3)(A) in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1535(a), 100 Stat. 2750, to include any sham or fraudulent transaction in the list of "tax motivated transactions". Sec. 6621(c)(3)(A)(v). The amendment applies (1) to any underpayment with respect to which there *796 was not a final court decision before the enactment of the act (October 22, 1986), and (2) to interest accruing after December 31, 1984. Price v. Commissioner, 88 T.C. 860, 888 (1987); DeMartino v. Commissioner, 88 T.C. 583 (1987), affd. without published opinion sub nom. McDonnell v. Commissioner, 862 F.2d 308 (3d Cir. 1988), affd. 862 F.2d 400 (2d Cir. 1988); see H. Conf. Rept. 99-841 (Vol. II) (1986), 1986-3 C.B. (Vol. 4) II-796. Section 6621(c)(3)(A), as amended to include sham transactions in the list of tax motivated transactions, applies in this case. The parties have stipulated and we have found as ultimate facts that the Programs were sham transactions without economic substance; therefore, the increased interest rate provided in section 6621(c) applies to the extent petitioners' underpayments were attributable to such transactions. Rybak v. Commissioner, supra at 568; Patin v. Commissioner, 88 T.C. 1086 (1987), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), *797 affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). Because all of petitioners' underpayments of tax were attributable to their interests in the Programs, we hold that petitioners are liable for increased interest under section 6621(c) for 1986 and 1987. Klieger v. Commissioner, supra.
To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. 50 percent of the interest due on $ 17,246.↩
2. 50 percent of the interest due on $ 16,183.↩
1. Petitioners resisted having their case consolidated with those of the other taxpayers who participated in the Programs. See Klieger v. Commissioner, T.C. Memo. 1992-734. Although both this case and the cases dealt with in Klieger were tried together and petitioners in both cases were represented by the same attorney, we have considered this case separately because petitioners argued that there were material factual differences between this case and the other consolidated cases in Klieger↩.
2. Sec. 6661(b)(2)(C)(ii) defines a tax shelter as: (I) a partnership or other entity, (II) any investment plan or arrangement, or (III) any other plan or arrangement,↩
if the principal purpose of such partnership, entity, plan, or arrangement is the avoidance or evasion of Federal income tax.