T.C. Memo. 1996-349

UNITED STATES TAX COURT

JAMES L. AND PATRICIA A. CONNELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4924-93.                    Filed July 31, 1996.

James L. Connell, pro se.

<u>Andrew M. Winkler</u>, for respondent.

MEMORANDUM OPINION

FAY, <u>Judge</u>:  This case was assigned to Special Trial Judge
D. Irvin Couvillion pursuant to section 7443A(b)(4)[1] and Rules
180, 181, and 183.  The Court agrees with and adopts the opinion
of the Special Trial Judge which is set forth below.

---

[1]    Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, Special Trial Judge:  Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax with respect to the following tax years:

| | | Additions to Tax | | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659(a) | Sec. 6661(a) |
| 1980 | $ 2,822 | $141 | -- | -- | $  847 | -- |
| 1983 | 14,045 | -- | $702 | * | 3,092 | $  900 |
| 1984 | 13,485 | -- | 674 | * | 2,072 | 1,491 |

* 50 percent of the interest due on the deficiency.

Respondent also determined that petitioners were liable for the increased rate of interest under section 6621(c), for each of the taxable years at issue.

Prior to trial, respondent filed a motion for leave to file an amended answer to claim an increased deficiency in tax for the year 1980.  The deficiency for 1980 arises from the carryback of an investment tax credit by petitioners for the year 1983.  On their 1983 income tax return, petitioners reported an investment tax credit of $17,924.08 from their investment in a partnership discussed later in this opinion.  Petitioners utilized $15,101.95 of the investment tax credit on their 1983 return and carried back the unused credit to their 1980 tax year.  Petitioners received a tentative refund of $2,822 for their 1980 tax year, and that is the amount of deficiency in tax set out in the notice of deficiency for 1980.  Later, respondent's Service Center noted

that petitioners had erroneously calculated their tax liability
for 1983 using the tax rates applicable to married individuals
filing separately, when instead petitioners were entitled to the
rates for married individuals filing jointly.  The Service Center
recomputed petitioners' 1983 tax, which reduced their tax
liability for that year by the amount of $4,654.  This correction
resulted in an increase in the carryback of the investment credit
to the 1980 tax year in the amount of $4,546 and a carryforward
of $108 of the credit to 1981.  The amounts of $4,546 and $108
were thereafter paid to petitioners as tentative refunds.  In the
notice of deficiency, respondent failed to include the $4,546
tentative refund for 1980 as part of the deficiency in tax for
1980, and the amended answer sought an increase in the deficiency
in tax for that year from $2,822 to $7,368 to reflect the
subsequent tentative refund for that year and to correspondingly
increase the additions to tax to $368 and $2,120, respectively,
under sections 6653(a) and 6659(a), and the increased interest
under section 6621(c).  The Court granted respondent's motion.[2]

The issues for decision are:  (1) Whether petitioners are
entitled to claimed losses and investment tax credits with
respect to James L. Connell's (petitioner) investment in 1983 in

---

[2]    Since petitioners' 1981 tax year is not before the Court,
the increased deficiency claimed by respondent does not include
the tentative refund of $108, which was paid to petitioners as a
carryforward of the credit to 1981.

the Barrister Equipment Associates Series 162 limited partnership (Series 162); (2) whether petitioners are liable for the additions to tax for negligence under sections 6653(a) and 6653(a)(1) and (2); (3) whether petitioners are liable for the additions to tax for valuation overstatements under section 6659(a); (4) whether petitioners are liable for the additions to tax for substantial understatements of income tax under section 6661(a) for the taxable years 1983 and 1984; and (5) whether petitioners are liable for the increased rate of interest under section 6621(c) for each of the years at issue.

These issues arise from petitioner's investment as a limited partner in Series 162. During 1983 and 1984, Series 162's principal place of business was in Rockville Centre, New York. Series 162 was one of approximately 95 limited partnerships organized in 1983 and 1984 that have been referred to as the Barrister Equipment Associates partnerships (the Barrister partnerships). This case is part of a national litigation project initiated by respondent involving the Barrister partnerships. The facts of this case are very similar to those considered by this Court in Barrister Equipment Associates Series #115 v. Commissioner, T.C. Memo. 1994-205. The facts in this case are also essentially the same as those considered in In re MDL-731-Tax Refund Litigation v. United States, 989 F.2d 1290 (2d Cir. 1993). Accordingly, in this case, the Court will summarize

the findings of facts to the extent necessary to address the issues identified above.  For a more detailed explanation of the Barrister partnerships, see the cases cited above.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference.  At the time the petition was filed, petitioners' legal residence was Santa Rosa, California.

The promoter of the Barrister partnerships, and of the transactions involved herein, was an individual named Irving Cohen (Cohen).  Cohen organized and controlled an entity named Universal Publishing Resources Ltd. (Universal).[3]  At Cohen's request, in 1981, Paul F. Belloff (Belloff) and Robert Gold (Gold) formed Barrister Associates (Barrister), a New York general partnership.  Belloff and Gold each held a 50-percent interest in Barrister.

Between 1981 and 1983, Barrister organized and was the general partner of the Barrister partnerships.  Barrister organized 35 limited partnerships in 1982, collectively named the Barrister Equipment Associates Series 80 through 114, and 300. In 1983, Barrister organized 60 limited partnerships, collectively named the Barrister Equipment Associates Series 115

---

[3]    The Madison Library, Inc. (Madison), a corporation, was owned, directly or indirectly, for the benefit of Cohen's children.  In the 1980's Madison formed a subsidiary, Geoffrey Townsend, Ltd. (Townsend).  Universal was a subsidiary of Townsend, and Cohen was Universal's president.

through 175, 201, and 302 (the 1983 partnerships). Series 162 was one of the Barrister partnerships organized in 1983. Barrister was the general partner and tax matters partner of Series 162.[4]

All of the Barrister partnerships were similar to each other, having all been organized to acquire and exploit literary and computer program properties (properties), which were purchased or leased, directly or indirectly, from corporations owned or controlled by Cohen. With respect to Series 162, Universal acquired the properties from several publishers and then leased these properties to Series 162.

On behalf of Series 162, Cohen arranged to have "services contractors" publish, distribute, and sell the products to be produced with the properties Universal leased to Series 162. In most cases, the services contractors were affiliates of the publishers of the books or the computer programs. For example, Confucion Press, Inc., a subsidiary of the publisher, Richard Gallen & Co., Inc., was expected to serve as a services

---

[4] Series 162 is subject to the unified audit and litigation procedures of secs. 6221-6233. Those provisions, sometimes referred to as the TEFRA procedures, were enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, and provide a method for adjusting partnership items in one unified partnership proceeding, rather than in separate proceedings with the partners. Maxwell v. Commissioner, 87 T.C. 783, 787 (1986); H. Conf. Rept. 97-760, at 600, 604 (1982), 1982-2 C.B. 600, 662, 664.

contractor for three of the properties that Universal would lease to Series 162.

The limited partnership interests in Series 162 were sold by Chadwick Investor Services, Inc. (Chadwick), a corporation owned by Belloff, Gold, and Ronald Cohen (no relationship to Irving Cohen). As compensation for selling the limited partnership interests in Series 162, Chadwick received a commission of 10 percent of the cash invested by the limited partners. Chadwick, in turn, paid a commission to its independent sales representatives.

During 1983, petitioner became involved in selling, as an independent sales representative, limited partnership interests in the 1983 Barrister partnerships, including Series 162.[5] As a result of those sales, petitioner received commissions during 1983 from Universal, Chadwick, and Townsend totaling $55,375. During 1984, petitioner received commissions from Parliament Securities, Inc.,[6] Universal, and Carrington Associates, an affiliate of Universal's, totaling $66,650.

In December 1983, petitioner acquired a 4.8781 percent limited partnership interest in Series 162 for $25,000, paying

---

[5]   Prior to 1983, petitioner had been a salesman for 25 years. Among the products previously sold by petitioner were mutual funds and life insurance. Petitioner has a college degree in business.

[6]   In 1984, Chadwick changed its name to Parliament Securities, Inc.

$12,500 in cash, and executing a promissory note for the remainder, which note was paid by petitioner a year later.[7] Prior to investing in Series 162, petitioner received an offering memorandum and a brochure that summarized the offering. Petitioner did not study these documents prior to his investment, because, as an independent sales representative, he had studied similar documents for other 1983 Barrister partnerships "with a fine-toothed comb" and found that all of the partnerships were "cookie cutter", i.e., basically the same. Furthermore, the specific book properties purchased by Series 162 were not of importance to petitioner.

For tax years 1983 and 1984, Series 162 reported partnership losses of $210,789 and $285,234, and investment tax credits of $4,593,000 and $1,770,000, respectively. On their 1983 and 1984 Federal income tax returns (returns), petitioners claimed their 4.8781 percent distributive share of these losses and investment tax credits from Series 162. More specifically, petitioners claimed partnership losses of $10,283 and $15,757 and investment tax credits of $10,447 and $6,907 for 1983 and 1984, respectively. In addition, petitioners claimed a tentative

---

[7]    The private placement memorandum (offering memorandum) of Series 162, dated Dec. 19, 1983, indicates that the limited partnership interests in Series 162 would be offered in 10 units of $50,000 each, for a total of $500,000 to the partnership. Although the record is not clear, petitioner apparently purchased a half-unit, since his limited partnership interest cost $25,000.

refund of $7,368 on their 1980 return for an unused investment tax credit carryback from the 1983 tax year.

On September 5, 1989, respondent issued notices of final partnership administrative adjustment to Barrister with respect to the partnership returns filed by Series 162 for 1983 and 1984. The tax matters partner of Series 162 petitioned this Court in the case of Anderson Equip. Associates  v. Commissioner, docket No. 27745-89.  A stipulated decision in that case was entered on February 17, 1995.

Petitioners were not subject to the TEFRA proceeding because they had previously filed, on February 28, 1992, a petition in bankruptcy under chapter 7 in the U.S. Bankruptcy Court, Northern District of California.  Pursuant to section 6231(c)(2) and the regulations thereunder, partnership items of a partner named as the debtor in a bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.  Sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987).  The effect of the conversion is to remove the partner from the partnership proceeding and subject the converted items to deficiency procedures applicable to the partner's individual tax case.  Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198, 203 (1987).

After the order of discharge in petitioners' bankruptcy proceeding was entered on July 7, 1992, respondent issued a notice of deficiency to petitioners on February 13, 1993. In the notice of deficiency, respondent disallowed the partnership losses and investment tax credits claimed by petitioners on their 1983 and 1984 returns and determined the additions to tax and increased rate of interest under section 6621(c).

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This burden of proof extends as well to the additions to tax and the increased rate of interest. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). However, with respect to respondent's amended answer, relating to an increase in the deficiency in tax for the year 1980 and correspondent increases in the additions to tax and increased interest, the burden of proof is on respondent, since the claim by respondent constitutes "new matter". Rule 142(a). The record reflects that respondent met that burden in that petitioners' income tax return for 1983 erroneously reflected a tax computation for married persons filing separately when in fact the computation should have been based on rates for married persons filing jointly, and by petitioner's acknowledgment of

having subsequently received the tentative refund of the investment credit carryback of $4,546 to the year 1980.

In the notice of deficiency, respondent disallowed the losses and credits claimed by petitioners on their 1983 and 1984 returns, determining that Series 162 was not an activity engaged in for profit and was devoid of economic substance.

In general, a transaction is effective for income tax purposes only if its economic substance is consonant with its intended tax effects. Frank Lyon Co. v. United States, 435 U.S. 561, 573 (1978); Knetsch v. United States, 364 U.S. 361, 365-366 (1960); Goldstein v. Commissioner, 364 F.2d 734 (2d Cir. 1966), affg. 44 T.C. 284 (1965). In evaluating whether a transaction possesses economic substance, the Court looks to objective factors that indicate whether the taxpayer acquired an equity interest in the property, and whether the taxpayer had a realistic potential for profit. Levy v. Commissioner, 91 T.C. 838, 856 (1988); Cherin v. Commissioner, 89 T.C. 986, 993 (1987); Packard v. Commissioner, 85 T.C. 397, 417 (1985).

The Court applied these objective factors in Barrister Equipment Associates Series #115 v. Commissioner, T.C. Memo. 1994-205, the test case in this Court for the litigation project involving the Barrister partnerships. In that case, this Court held that the transactions involving Barrister partnerships Series 115 (Series 115) lacked economic substance and were shams.

Respondent determined the deficiencies against petitioners on the premise that the facts and transactions involved in this case are essentially the same as those in <u>Barrister Equipment Associates Series #115 v. Commissioner</u>, <u>supra</u>.  Although petitioner's investment in Series 162 was not exactly the same as the investments in Series 115, petitioner acknowledged, at trial, that the facts surrounding, and the transactions involving, Series 115 and Series 162 were basically the same, and that, essentially, the partnerships were all "cookie-cutter". Petitioners presented no evidence to show that petitioner's investment in this case differed in a material manner from those in Series 115.  Accordingly, the Court finds that the holding in <u>Barrister Equipment Associates Series #115 v. Commissioner</u>, <u>supra</u>, is controlling and, therefore, is applicable to this case. See <u>Simmons v. Union News Co.</u>, 341 F.2d 531, 533 (6th Cir. 1965); see also <u>Leishman v. Radio Condenser Co.</u>, 167 F.2d 890 (9th Cir. 1948).  The Court, therefore, finds that the transactions involving Series 162 lacked economic substance.  Accordingly, respondent is sustained as to the deficiencies in tax.

Respondent determined that petitioners are liable for additions to tax for negligence for the taxable years in issue. Section 6653(a) for 1980 and section 6653(a)(1) for 1983 and 1984 impose an addition to tax if any portion of an underpayment is due to negligence or intentional disregard of rules or

regulations. For 1983 and 1984, section 6653(a)(2) imposes an addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985).

With respect to the issue of negligence, petitioners are required to prove that their actions in connection with Series 162 were reasonable in light of their experience and the nature of the investment. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). Within this framework, petitioners may prevail if they reasonably relied on competent professional advice. Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). However, "Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered." Id. at 888. Furthermore, the Court has rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447.

At trial, petitioner stated that, in 1983, at the recruitment meeting for the Barrister partnerships' independent sales representatives, the presentation by the partnership promoters originally did not pass petitioner's "sniff test". Petitioner was skeptical as to whether the Barrister partnerships had economic substance. However, after speaking with numerous certified public accountants (C.P.A.'s), attorneys, and other tax professionals, petitioner became convinced that the partnerships were not shams. He decided to become an independent sales representative and, eventually, an investor in Series 162. Petitioner stated that, in making this decision, he did not focus on the cash flow projections of the partnerships because the C.P.A.'s made these computations for petitioner, and he accepted their responses.

Prior to petitioner's involvement in the Barrister partnerships, he had never been involved in book publishing. Petitioner has a college degree in business and, for approximately 25 years, was a salesman. The fact that petitioner did not have knowledge of the book publishing industry did not concern him because he felt that Cohen, as well as the services contractors, had a great deal of experience in the industry. However, petitioner did not consult with these individuals or anyone else in the publishing business about the economic

substance of Series 162 or any other of the Barrister partnerships.

Petitioner solely relied on the advice of the C.P.A.'s, attorneys, and other tax professionals in determining whether to invest in Series 162. At trial, petitioner acknowledged that none of these individuals were knowledgeable about the book publishing industry. The advice of these individuals appears, from the record, to have been strictly about the tax aspects of the venture. As stated above, this Court has rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied on by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447. Such is the case here. Petitioners have failed to persuade the Court that their actions in connection with their investment in Series 162 were reasonable in light of their experience and the nature of their investment. Petitioner acknowledged at trial that, based on the presentation of the promoters at the recruitment meeting in 1983, he was not satisfied about the merits of the promotion and was skeptical that the Barrister partnerships had economic substance. Petitioner was not only an investor, but he was also a promoter of investments in the partnerships from which he derived substantial sales commissions. He made no independent

investigations of the merits of the investment programs he promoted with persons knowledgeable about the book publishing business. Petitioner's role as promoter, coupled with his initial skepticism, placed him in the situation where he should have done more than merely rely on discussions with individuals who had no knowledge of the nontax aspects of the investment. On this record, the Court holds that petitioners are liable for the additions to tax for negligence for the years at issue. Respondent is sustained on this issue.

Respondent determined that petitioners are liable for the additions to tax for valuation overstatements under section 6659(a) on the underpayments of their Federal income taxes for the years at issue attributable to the investment tax credits claimed with respect to Series 162.

A graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds $1,000 and is attributable to a valuation overstatement. Sec. 6659(a), (d). A valuation overstatement exists if the fair market value (or adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount. Sec. 6659(c). If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment. Sec. 6659(b). In this case, respondent determined that the overstatement percentage in petitioner's investment in

Series 162 was over 1,000 percent and accordingly applied the 30-percent rate.

As stated above, petitioners bear the burden of proving that respondent's determination on this issue in the notice of deficiency is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioners failed to present any evidence to show that respondent's determination under section 6659(a) was erroneous. Accordingly, respondent is sustained on this issue.

Section 6661(a) imposes an addition to tax equal to 25 percent of the amount attributable to a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A).[8]

Petitioners failed to present any evidence to prove that they should not be held liable for the additions to tax under section 6661(a). Rule 142(a); Bixby v. Commissioner, supra. Accordingly, respondent is sustained on this issue.

With respect to the increased rate of interest determined by respondent, section 6621(c) provides for an increased rate of interest with respect to any underpayment in excess of $1,000 that is "attributable to one or more tax motivated transactions".

---

[8]    An understatement will be reduced to the extent that it is: (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Petitioners have failed to prove that either of these situations existed in this case.

Sec. 6621(c)(1) and (2).  The increased rate of interest applies to interest accruing after December 31, 1984.  See DeMartino v. Commissioner, 88 T.C. 583, 589 (1987), affd. 862 F.2d 400 (2d Cir. 1988), affd. without published opinion sub nom. McDonnell v. Commissioner, 862 F.2d 308 (3d Cir. 1988) (the increased rate of interest applies to interest accruing after December 31, 1984, even though the transaction in question was entered into before the date of enactment of section 6621(c)).  Respondent determined that petitioners were liable for the increased interest because the underpayments for the taxable years at issue were attributable to tax-motivated transactions.

Section 6621(c)(3)(A)(v) provides that the term "tax-motivated transaction" includes "any sham or fraudulent transaction."  Economic shams, or transactions that lack economic substance, fall within the ambit of section 6621(c)(3)(A)(v).  Patin v. Commissioner, 88 T.C. 1086, 1128-1129 (1987), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988).  The Court has concluded that Series 162 was an economic sham.  Accordingly, respondent's determination that petitioners were liable for the

increased rate of interest under section 6621(c) with respect to the deficiencies for 1980, 1983, and 1984 is sustained.

To reflect the foregoing,

<u>Decision will be entered for respondent.</u>